UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Wanda Jean Coleman, ) | Civil Action No.: 6:16-cv-000361-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Nancy A. Berryhill, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. | |

Plaintiff Wanda Jean Coleman ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under Title XVI of the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF #21].

**Factual Findings and Procedural History**

The procedural timeline and factual findings are adequately set forth by the Magistrate Judge in the Report and Recommendation (the "R&R"). [ECF #21, pp. 1-14]. Briefly stated, Plaintiff applied for DIB on April 6, 2011, alleging an onset date of August 1, 2003. She was thirty-eight years old on her alleged disability onset date and had past relevant work experience as a waitress and an assembler from 2004 and 2010. For the relevant time period reviewed in this application for benefits, Plaintiff's medical history consistently reveals a prevalent and long-standing substance abuse problem. She also alleges issues related to back pain, fibromyalgia, and mental conditions, including depression and

anxiety.

In 2006, Plaintiff was treated at various hospitals for anxiety, panic attacks, and back pain. [ECF #11-8, Ex. 3F]. In April of that same year, Plaintiff was involuntarily committed to a hospital to undergo detoxification and treatment for major depression and opioid dependency. [ECF #11-8, Ex. 3F]. She was again treated in May of 2006 for back pain and anxiety. [ECF #11-8, Ex. 3F]. In January of 2007, Plaintiff was again hospitalized to receive treatment for opioid dependency and mood disorder. [ECF #11-7, Ex. 1F]. Plaintiff was hospitalized in March of 2007 for side effects caused by abuse of prescription medications, as well as for substance abuse, pain and panic attacks. [ECF #11-8, Ex. 3F]. Later that month, she was committed to the hospital for treatment of mood disorder, opioid dependence, and benzodiazepine dependence, with medical records noting she had "severe and persistent drug use." [ECF #11-7, Ex. 1F]. Later that year, Plaintiff underwent additional hospitalization for treatment of opioid dependence, benzodiazepine dependence, depression, generalized anxiety disorder, panic disorder with agoraphobia, and claustrophobia. [ECF #11-7, Ex. 1F]. The medical treatment was focused on Plaintiff's attempted withdrawal from continued opioid misuse. [ECF #11-7, Ex. 1F]. At that time, the attending physician opined that Plaintiff did not meet the criteria for a bipolar diagnosis. [ECF #11-7, Ex. 1F].

However, in June of 2007, Plaintiff was again treated for opiate dependence and bipolar disorder after her children insisted she seek treatment after using her boyfriend's Lortab. [ECF #11-7, Ex. 1F]. On July 2, 2007, a month later, Plaintiff was treated for poly-substance abuse, depression, bipolar disorder, and agoraphobia and panic disorder after presenting to the hospital after an overdose on Tylenol and a case of beer. [ECF #11-7, Ex. 2F]. She was again treated in late July of 2007 for poly-substance abuse and abdominal pain. [ECF #11-11, Ex. 6F]. Dr. Wade Harris diagnosed Plaintiff with

major depression and anxiety at that time. Plaintiff was admitted again in August of 2007 for benzodiazepine withdrawal. In November and December of 2007, Plaintiff was treated for anxiety and low back pain [ECF #11-9, Ex. 3F; ECF #11-10, Ex. 4F]. Dr. Daniel Jebens treated Plaintiff from 2008-2012 for low back pain, depression, and anxiety. [ECF #12-6].

From 2009-2011 Plaintiff was hospitalized several times for treatment of depressive disorder and amphetamine dependence or for issues related to her history of poly-substance abuse. [ECF #12-5]. Finally, Plaintiff's other medical records suggest she was treated over the last few years (from 2013-2014) for gastrointestinal issues, such as ulcers, gastroesphageal reflux disease, nausea, vomiting, abdominal pain, and acute gastritis. [ECF #12-6; Ex. 18F and 19F]. Plaintiff was also treated in 2013 and 2014 for issues related to a respiratory infection, abdominal pain, and, at one point, for seizure-like activity. [ECF #12-7; Ex. 20F].

Plaintiff participated in two hearings related to her claim. Plaintiff's testimony at the first hearing involved her describing her panic attacks and depression, while also explaining that she sometimes took too much prescription medication. She also testified that she suffers from fibromyalgia. [ECF #11-2, pp. 69-92]. At the second hearing, Plaintiff testified that she has difficulty concentrating and being around people. [ECF #11-2, pp. 30-68]. She again referenced difficulties with fibromyalgia and pain in her back and said that her mental limitations prevented her from working. [ECF #11-2, pp. 30-68]. Plaintiff's application was denied initially and upon reconsideration, so she requested a hearing. Following an administrative hearing, Plaintiff's application was denied in an order dated October 18, 2012. Plaintiff then requested the Appeals Council review the decision, and upon review, the Appeals Council vacated the hearing decision and remanded the case for further proceedings. Plaintiff appeared at a second hearing on June 4, 2014, where an impartial vocational

3

expert was also present. After considering the evidence presented before her and the testimony at the hearing, the ALJ issued an unfavorable decision on September 26, 2014. [ECF #11-2, p. 93]. The ALJ's findings were as follows:

> (1) The claimant last met the insured status requirements of the Social Security Act on March 31, 2008.
>
> (2) The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2003 through her date last insured of March 31, 2008 (20 C.F.R. 404.1571 *et seq.*).
>
> (3) Through the date last insured, the claimant had the following severe impairments: arthritis, back and joints; scoliosis; degenerative disc disease and degenerative joint disease; anxiety; depression, bipolar disorder; and polysubstance abuse (20 C.F.R. 404.1520(c)).
>
> (4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).
>
> (5) After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b). I specifically find the claimant can lift or carry, push or pull, 20 pounds occasionally and 10 pounds frequently and she can sit, stand or walk, each for 6 hours in an 8-hour workday. I also find that she can only occasionally climb a ladder, and frequently climb stairs or ramps. She can occasionally stoop, and frequently perform other posturals. Finally, I find she can perform simple, routine, repetitive work with occasional public contact and frequent contact with co-workers.
>
> (6) Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. 404.1565).
>
> (7) The claimant was born on April 16, 1965 and was 42 years old, which is defined as a younger individual age 18-49, on the date last insured (20 C.F.R. 404.1565).
>
> (8) The claimant has a limited education and is able to communicate

>    in English (20 C.F.R. 404.1564).
>
>    (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).
>
>    (10) Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. 404.1569 and 404.1569(a)).
>
>    (11) The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2003, the alleged onset date, through March 31, 2008, the date last insured (20 C.F.R. 404.1520(g)).

[ECF #11-2, pp. 13-18].

Plaintiff again sought review by the Appeals Council regarding this decision, but the Appeals Council denied her request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. On February 5, 2016, Plaintiff filed her Complaint in this Court. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #17; ECF #18; ECF #19], and the Magistrate Judge issued a Report and Recommendation on June 14, 2017, recommending that the Commissioner's decision be affirmed. [ECF #21, p. 23]. Plaintiff filed objections on June 19, 2017. [ECF #22]. Defendant replied to these objections July 3, 2017. [ECF # 24].

## Standard of Review

**I.** **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more

than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

**II.     The Court's Review of the Magistrate Judge's Report and Recommendation**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

Here, after reviewing the record, including the briefs filed by the parties, the Magistrate Judge recommends affirming the decision of the Commissioner. Plaintiff raises several objections to these findings: (1) the Magistrate Judge erred in finding that the ALJ properly concluded Plaintiff did not have significant impairment with respect to her mental functional abilities, in part due to an alleged faulty hypothetical question posed to the vocational expert; (2) the Magistrate Judge failed to adequately consider the impact Plaintiff's severe pain had on her mental functional capacity; and (3) the Magistrate Judge erred in agreeing with the Commissioner that Plaintiff's limitations were due to her addiction to opioid drugs, and accordingly she was not disabled. [ECF #22, pp. 1-3]. This Court will analyze the merit of each objection below.

## Analysis

### A. ALJ's Decision Unsupported by Medical Evidence & Testimony

Plaintiff's first objection is that the Magistrate Judge erred in determining that the ALJ's decisions was supported by substantial evidence. Plaintiff also raised this issue in her brief. Plaintiff first argues that medical testimony does not support a finding that Plaintiff is not disabled; however

7

she does not provide any references to the specific evidence in the record she believes contradicts the ALJ's finding. She further objects that substantial evidence supports this decision because she argues the ALJ relied upon the testimony of a vocational expert who testified that Plaintiff could perform several jobs in the economy based on her limitations, thereby precluding a finding that Plaintiff is disabled. Plaintiff argues that this is reversible error because the ALJ's hypothetical question to the vocational expert did not include limitations reflecting Plaintiff's mental abilities, despite the fact that she had been hospitalized twelve times, treate at a mental health clinic, and had been to the emergency room thirty-one times, often for treatment of a mental illness or poly-substance abuse.

In *Walker v. Bowen*, the Fourth Circuit Court of Appeals held that the opinion of a vocational expert is not particularly helpful if not delivered in response to a hypothetical question that *fairly* sets out claimant's impairments. 889 F.2d 47, 50 (4th Cir. 1989) (emphasis added). Several years later, the Fourth Circuit held that a hypothetical question that adequately reflects a residual functional capacity supported by sufficient evidence is proper. *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). While a vocational expert's testimony may not be relevant or helpful if not based upon all evidence of record, vocational experts are also not psychology experts qualified to render medical opinions; rather, they are able to opine as to whether certain jobs exist in the national economy given certain mental or physical demands of different jobs as compared to a given residual functional capacity. *See Fisher v. Barnhart*, Civil Action No. 05-1473, 2006 WL 1328700, at *5 (4th Cir. 2006).

*Fisher* involved a similar challenge to the ALJ's determination that a claimant was not disabled based upon that ALJ's reliance on testimony from a vocational expert. In *Fisher*, the Fourth Circuit did not agree that the ALJ's residual functional capacity and subsequent hypothetical posed to the vocational expert failed to reflect the plaintiff's alleged mental limitations. *Fisher* determined that the

8

ALJ considered the mental limitations and reflected those limitations in the RFC by preventing the plaintiff from performing complex tasks. *Id.* at *4. Similarly, the ALJ in Fisher told the vocational expert to assume the claimant could perform "unskilled work" and cannot perform complex tasks, reflecting the RFC that was previously determined to be supported by substantial evidence. *Id*. at *5. Thus, *Fisher* held that because the ALJ's RFC determination was supported by substantial evidence and the hypothetical question incorporated that determination, there was no reversible error.

Similarly, in this case the ALJ determined that Plaintiff had the RFC to perform a range of light, unskilled work. Specifically, the ALJ stated that Plaintiff could perform simple, routine, repetitive work. Based upon this RFC, the ALJ asked the vocational expert to consider a person of Plaintiff's age, education, and vocational background, who could life, carry, push, and/or pull 20 pounds occasionally and ten pounds frequently; sit, stand or walk for six hours each during an eight-hour workday; climb a ladder and stoop occasionally, climb stairs or ramps and perform other postural activities frequently; and perform simple, routine, repetitive work with occasional public contact and frequent contact with others. [ECF #11-2, pp. 64-65].

The record is devoid of any determination by a mental health professional suggesting Plaintiff had work-preclusive mental limitations. Moreover, the record reveals, as noted by the ALJ that the inpatient admissions resulted from substance abuse, as opposed to mental impairments. Moreover, the ALJ relied upon the fact that no medical examiner determined Plaintiff's mental limitations were work preclusive, she was generally admitted to the hospital for complications related to her persistent drug use, upon treatment and/or detoxification at the hospital, her mental symptoms generally improved and she stabilized, and Plaintiff often did not follow the suggested treatment plan. The ALJ adequately explained why she determined that Plaintiff retained the ability to perform simple, routine repetitive

9

work by considering the mental limitations that were present in the record. This Court is not tasked with the duty of reweighing the evidence in this case. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Accordingly, the hypothetical question and subsequent vocational expert testimony based upon this determination were proper and the resulting findings were supported by substantial evidence. This Court overrules Plaintiff's objections related to these issues.

### B. Impact of Severe Pain upon Mental Limitations

Plaintiff next objects to the Magistrate Judge's finding that her pain did not significantly interfere with her mental functional capacity. Plaintiff generally argues that the record otherwise shows that her pain was severe enough to impact her focus and ability to stay on task. Assessing a claimant's credibility regarding pain involves a two-step process. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)). First, objective medical evidence must show the existence of a medical impairment that "could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Id.* (internal quotation marks omitted). If the Commissioner determines the threshold step is satisfied, the Commissioner must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects h[is] ability to work.[1] *Id.* at 595. The Commissioner's evaluation must account for not only Plaintiff's statements about his pain, but also for all available evidence, "including the claimant's medical history, medical signs, and laboratory findings . . . ; any objective medical evidence of pain . . . ; and any other evidence relevant

---

[1] The regulations set forth a framework for evaluating symptoms and prescribe seven factors for analyzing the claimant's credibility. 20 C.F.R. § 404.1529(c)(3). These factors are (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Id.* (internal quotation marks and citations omitted). Once a claimant meets the "threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant is] entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that his pain is so continuous and/or so severe that it prevents him from working a full eight hour day." *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006). However,

> This is not to say . . . objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . .

*Craig*, 76 F.3d at 595. A claimant's symptoms, including pain, are considered to diminish claimant's capacity to work to the extent that alleged functional limitations are reasonably considered with objective medical evidence and other evidence 20 C.F.R. § 404.1529(c)(4).

Here, the ALJ determined that while Plaintiff's medically determinable mental and physical impairments could reasonably be expected to cause her alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely credible based on the ALJ's review of the record. [ECF #11-2, p. 23]. The Magistrate Judge determined that the ALJ adequately summarized his reasons for this finding, including the fact that Plaintiff's allegations of pain did not significantly interfere with her daily functioning. The ALJ considered several factors, including the fact that Plaintiff had relatively normal mental evaluations once she stabilized after being prescribed

11

medication. [ECF #11-2, p. 23], and Plaintiff was not always compliant with medication. In fact, while Plaintiff was advised to seek the care of a psychiatrist or therapist, and to enter into a 12-step program, she was noncompliant. This evidence suggested to the ALJ that Plaintiff's symptoms were not as troubling as alleged. The ALJ also considered the fact that Plaintiff's activities of daily living, such as watching television, reading the Bible, washing dishes, shopping for groceries, taking walks, and visiting with family tended to suggest that she was not in as much pain as alleged. [ECF #11-2, p. 23]. Accordingly, this Court finds that any finding by the ALJ that pain did not significantly interference with Plaintiff's mental functional capacity is supported by substantial evidence, and this objection is overruled.

**C. Effect of Opioid Addiction**

Finally, at the conclusion of Plaintiff's objections she appears to argue that the Magistrate Judge erred in "essentially" agreeing with the determination that most of Plaintiff's limitations were due to her addiction to opioid drugs. Plaintiff argues that because she was taking prescription medication which is highly addictive, it was predictable that she would become addicted to these drugs, and therefore this is an inadequate basis to deny her claim. [ECF #22, p. 3]. First, Plaintiff provides no evidentiary testimony or legal support regarding this objection. Second, the ALJ referenced the fact that her polysubstance abuse was not a contributing factor material to the determination of disability. [ECF #11-2, p. 18]. Nonetheless, the Social Security Act prohibits the definition of "disabled" if drug use is a contributing factor material to the disability determination. 42 U.S.C. §§ 423(d)(2)(C); 1382(a)(3)(J). Accordingly, this Court does not find support for Plaintiff's objection that she should have been found disabled because her addiction to pain medication impairs her ability to work. This objection is overruled.

## Conclusion

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to Plaintiff's objections, and the applicable law. For the foregoing reasons, the Court adopts and incorporates the recommendation of the Magistrate Judge. [ECF #21]. The Commissioner's decision is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.

Florence, South Carolina  s/ R. Bryan Harwell
July 31, 2017  R. Bryan Harwell
United States District Judge